```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

     -against-                          MEMORANDUM & ORDER
                                        20-CR-0235-2 (JS)
TORRANCE LANGHORNE a/k/a FELLA,

                    Defendant.
-------------------------------X
APPEARANCES
For United States:  Michael R. Maffei, Esq.
                    Andrew P. Wenzel, Esq.
                    United States Attorney's Office
                    610 Federal Plaza
                    Central Islip, New York  11722

For Defendant:      Gary Matthew Kaufman, Esq.
                    Law Office of Gary Kaufman, PLLC
                    377 Broadway, 8th Floor
                    New York, New York  10013
```

SEYBERT, District Judge:

Torrance Langhorne a/k/a Fella ("Defendant") moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29 and for a new trial pursuant to Rule 33. (See Mot., ECF No. 161; Support Memo, ECF No. 161-1.)  For the following reasons, Defendant's motions are DENIED.

<u>BACKGROUND</u>

The Court presumes familiarity with the record and summarizes the facts and evidence only as necessary for resolution of Defendant's motion.[1]

---

[1] The facts are recited as relevant to the Court's analysis and are drawn from the Docket, the Indictment, pre-trial proceedings,

Defendant was charged with seven counts related to the possession and distribution of controlled substances: (1) conspiracy with Kareem Lemay ("Lemay") to distribute and possess with intent to distribute cocaine and cocaine base; (2) distribution and possession with intent to distribute cocaine to Joshua Georges ("Georges") on July 23, 2019; (3) distribution and possession with intent to distribute cocaine base to Anthony Miller ("Miller") on December 19, 2019; (4) distribution and possession with intent to distribute cocaine base to Miller on December 23, 2019; (5) distribution and possession with intent to distribute cocaine to George Filla ("Filla") on January 9, 2020; (6) distribution and possession with intent to distribute cocaine to Filla on January 10, 2020; and (7) possession with intent to distribute cocaine base on January 16, 2020. (Second Superseding Indictment, ECF No. 77.)[2]

Jury selection commenced on September 26, 2022. During the year preceding trial, Defendant proceeded pro se, with CJA appointed counsel, Glenn Obedin, Esq., serving as stand-by counsel. Obedin provided assistance to Defendant with pre-trial motion practice, including filing a motion to sever Defendant's

---

and the Trial Transcript ("Tr."). Citations to "GX" refer to the Government's exhibits.

[2] The Court numbers the Counts in the Second Superseding Indictment as they were identified in the Superseding Trial Indictment (ECF No. 145).

trial from his co-defendant Lemay's trial as well as opposing the Government's motion in limine, and appeared at all conferences in the lead-up to trial.  At Defendant's request, Obedin also participated in the jury selection process.  However, when trial began on October 3, 2022, Defendant reiterated his intent to proceed pro se and delivered his own opening statement.  Defendant also proceeded pro se as the Government began questioning its witnesses during the case-in-chief.  On October 6, 2022, in the midst of his cross-examination of one of the Government's main witnesses, Detective Patrick McDermott ("McDermott"), Defendant forewent self-representation and allowed Obedin and his co-counsel, Daniel Russo, Esq. to represent him.[3]  Obedin and Russo then represented Defendant for the remainder of trial, including summations.  On October 17, 2022, the jury returned its verdict, finding Defendant not guilty as to Counts One and Two, and finding Defendant guilty as to Counts Three through Seven.

Immediately after trial, the relationship between Defendant and his trial counsel deteriorated, such that the Court granted their motion to withdraw.  (See Oct. 24, 2022 Min. Entry, ECF No. 150.)  On November 2, 2022, the Court appointed Gary Kaufman, Esq. to represent Defendant, who filed the instant motion

---

[3] The Court notes that both Obedin and Russo were in the courtroom and seated at the counsel table with Defendant even while serving as "legal advisors" to the previously pro se Defendant.

3

on February 6, 2023.  The Government submitted its opposition on March 2, 2023 and Defendant submitted a reply on March 29, 2023. (See Opp'n, ECF No. 162; Reply, ECF No. 163.)

DISCUSSION

I.   <u>Legal Standards</u>

    A.   <u>Rule 29 Motion for a Judgment of Acquittal</u>

Under Rule 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "Under Rule 29, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Kenner</u>, No. 13-CR-0607, 2019 WL 6498699, at *3 (E.D.N.Y. Dec. 3, 2019) (internal quotation marks and citations omitted).  "[V]iewing the evidence in the light most favorable to the government means drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility."  <u>Id.</u> (internal quotation marks and citation omitted).

    B.   <u>Rule 33 Motion for a New Trial</u>

Under Rule 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest

4

of justice so requires." This Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." United States v. Aguiar, 737 F.3d 251, 264 (2d Cir. 2013) (internal quotation marks and citation omitted). "A district court may grant a Rule 33 motion only in extraordinary circumstances, and only if there exists a real concern that an innocent person may have been convicted." Kenner, 2019 WL 6498699 at *3 (internal quotation marks and citations omitted). Rule 33 gives this Court "broad discretion" but "that discretion must be exercised 'sparingly,' and relief under the rule should be granted 'only with great caution and in the most extraordinary circumstances.'" United States v. Mayes, No. 12-CR-0385, 2014 WL 3530862, at *1 (E.D.N.Y. July 10, 2014) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)); see also United States v. Costello, 255 F.2d 876, 879 (2d Cir. 1958). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).

II. Analysis

　　　　Defendant first moves pursuant to Rule 29 and argues the Government's evidence was insufficient to prove Counts Three through Seven. Then, under Rule 33, Defendant argues the interests of justice require a new trial because: (1) Detective John Gang ("Gang") improperly provided lay opinion as to the septic system

in Defendant's home; (2) the Court improperly excluded evidence
that would have shown Detective McDermott's bias towards
Defendant; (3) the Government's witnesses "were so lacking in
credibility"; (4) the jury was unfairly impacted by Defendant's
prior narcotics-related criminal record and his current
incarceration; and (5) Defendant was denied his Sixth Amendment
right to effective assistance of counsel.

A.   Counts Three through Six

Counts Three through Six pertain to Defendant's sales of
cocaine base to Miller on December 19 and December 23, 2019, and
the sales of cocaine to Filla on January 9 and January 10, 2020.
Defendant challenges the verdict as to each of these Counts by
arguing: (1) the Government did not present any text messages,
emails, social media messages, or telephonic communications
between Defendant and Miller or between Defendant and Filla;
(2) the Government did not present any evidence that the drugs
provided by the informants to law enforcement emanated from
Defendant; (3) the video and audio evidence neither clearly
depicted the charged drug transactions nor included any mentions
of the words "cocaine," "crack" or "cocaine base"; and (4) Miller
is a drug addict and his testimony was not supported by a sworn
statement or affidavit.  (Support Memo at 4-10.)

The Court readily rejects Defendant's argument regarding
electronic messages or communications because the Government is

entitled to prove its case by whichever means it chooses, and Defendant has cited no authority to the contrary to indicate that the Government was required to introduce evidence of electronic messages or communications here.  See United States v. Mack, No. 20-CR-0376, 2021 WL 4851391, at *4 (2d Cir. Oct. 19, 2021) ("[T]he prosecution is entitled to prove its case by evidence of its own choice[.]" (quoting Old Chief v. United States, 519 U.S. 172, 186 (1997))).

Next, Defendant argues the "Government did not present any evidence" that shows the cocaine and cocaine base provided by Miller and Filla to law enforcement after the controlled buys were actually from Defendant.  (Support Memo at 5, 7, 9, 10.)  This contention is patently false.  Miller and Filla both testified that they purchased the substances at issue from Defendant on the dates as alleged in the Indictment.  (See Tr. at 453-58 (Filla testifying that he purchased $40 worth of cocaine from Defendant on January 9, 2020); id. at 458-63 (Filla testifying that he purchased $40 worth of cocaine from Defendant on January 10, 2020); id. at 516-21 (Miller testifying that he purchased crack from Defendant on December 19, 2019); id. at 532-35 (Miller testifying that he purchased crack from Defendant on December 23, 2019).) Further, the Government introduced evidence from a forensic chemist which indicated the substances provided by Miller and Filla to law enforcement as a result of the controlled buys were cocaine

7

and cocaine base.  (See Tr. at 731-46 (citing GX 12; GX 14; GX 21; GX 22; GX 31; GX 32; GX 41; GX 42).)

With respect to the controlled buys involving Miller, Defendant argues the cocaine base Miller provided to law enforcement could have been obtained from a source other than Defendant.  (See Support Memo at 5-6.)  In particular, Defendant argues that law enforcement's search of Miller was "incomplete" on December 19, 2019 because McDermott did not require Miller to take off his clothes, shoes, or shirt and there is conflicting testimony as to whether Miller's car was searched.  (Id. at 5.)  Then, as to law enforcement's actions on December 23, 2019, Defendant argues Miller could have purchased drugs from an individual in the park behind Defendant's home because McDermott did not remain in view of Defendant's home and McDermott did not search Miller's shoes or underneath his shirt before the buy. (Id. at 7.) Defendant's dissatisfaction with the Government's investigative techniques employed here does not negate the evidence described in the preceding paragraph such that no reasonable jury could find Defendant guilty beyond a reasonable doubt.  Moreover, the Government "need not disprove 'every possible hypothesis' of the defendant's innocence' to sustain the jury's verdict." United States v. Anderson, 747 F.3d 51, 60 (2d Cir. 2014) (citing United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998)); see also United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011) ("Viewing the

evidence in the light most favorable to the government means 'crediting every inference that the jury might have drawn in favor of the government,' and recognizing that the government's evidence need not exclude every other possible hypothesis." (first quoting United States v. Temple, 447 F.3d 130, 136-37 (2006); then citing United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004))). This same principle applies to Defendant's argument which asks the Court to infer that Defendant gave Miller marijuana instead of cocaine base on December 19, 2019 because the video evidence (GX 10), "appeared to show Mr. Langhorne handing something to Mr. Miller," but did not clearly show the transaction involved cocaine base. (Support Memo at 5-6.) The only evidence that indicates Defendant gave Miller marijuana instead of cocaine base on December 19, 2019 is Defendant's own testimony. (See Tr. at 806). Although Defendant asks the Court to credit his version of events rather than the Government's, where there are competing inferences, the Court must defer to the jury's choice because "it is the task of the jury, not the [C]ourt, to choose among competing inferences that can be drawn from the evidence." Anderson, 747 F.3d at 60 (citing United States v. Eppolito, 543 F.3d 25, 45 (2d Cir. 2008)).

Turning to Defendant's attacks against the video and audio recordings introduced by the Government because such evidence does not depict Defendant, Miller and Filla using the specific words "crack," "cocaine" or "cocaine base" during the

controlled buys, the Court also finds those arguments unavailing. In essence, Defendant asks the Court to view the video and audio recordings in isolation from the rest of the Government's case, which is contrary to well-established principles governing the review of Rule 29 motions which require "the Court [to] 'view pieces of evidence not in isolation but in conjunction.'" United States v. Flom, 256 F. Supp. 3d 253, 264 (E.D.N.Y. 2017) (quoting United States v. Torres, 604 F.3d 58, 67 (2d Cir. 2010)), aff'd, 763 F. App'x 27 (2d Cir. 2019).  However, the mere fact that Defendant, Miller, and Filla did not use the words "crack," "cocaine" or "cocaine base" in any video or audio recordings does not render the Government's other evidence so specious or speculative to override to jury's findings.  As noted by the Government's expert, Detective Robert Stueber, drug dealers and purchasers often speak in slang or utilize code words.  (See Tr. at 32.)

Last, Defendant argues "the testimony of the drug addicted . . . Miller[] was not supported by any sworn statement or affidavit, nor was the[] alleged[] evidence of his December 19 [and 23,] 2019 purchase[s] used to establish probable cause for the January 16, 2020 search of" Defendant's home.  (Support Memo at 6, 8.)  Based upon this, Defendant argues there was not enough evidentiary support for both of Defendant's sales to Miller "for law enforcement to feel comfortable using it to establish probable

10

cause for a warrant." (Id.)  In making this argument, Defendant does not cite to a single legal authority which requires the Government to introduce a sworn statement or affidavit when eliciting testimony from a drug addict.  Further, the Court will not play guessing games as to law enforcement's decisions regarding its presentation of the search warrant application for Defendant's home.  Whether law enforcement was "comfortable" to utilize evidence obtained from Miller to establish probable cause for the search warrant is irrelevant to the Court's inquiry as to whether there was sufficient evidence at trial from which a reasonable jury could find Defendant guilty as to Counts Two and Three.

Accordingly, Defendant's Rule 29 motion against Counts Two through Six is DENIED.

B.  Count Seven

The last prong of Defendant's Rule 29 motion seeks a judgment of acquittal on Count Seven. (See id. at 10.)  According to Defendant, "there was no sufficient evidence, from which a reasonable juror could have concluded beyond a reasonable doubt[,] that the cocaine base recovered [from a waste pipe inside of Defendant's home] belonged to [Defendant], and that he possessed such cocaine base for the purpose of distribution." (Id. at 10-11.)  Defendant claims the evidence at trial demonstrates "that no one saw any drugs being flushed down the toilet," that "law enforcement did not see [Defendant] enter or exit from the bathroom

11

during the execution of the search warrant," and there was no testimony that Defendant "had any drugs on his person . . . or . . . in his home." (Id. at 11.)

The evidence at trial demonstrated that when law enforcement began to execute the search warrant on January 16, 2020, it took them three to four minutes to enter Defendant's home. (Tr. at 666.) This several-minute delay gave law enforcement, particularly Detective Gang, concerns that evidence would be destroyed by being "throw[n] out the window [or] flush[ed] down the toilet." (Id. at 667.[4]) Upon entering Defendant's ranch-style home, Detective Gang went into the bathroom and observed "water splashed all around the base of the toilet bowl," "a cell phone sitting on top of the vanity" next to the toilet, and a low-level of water in the toilet." (Id.) This prompted Detective Gang to go "directly under that bathroom's septic access which was in a utility room in the basement," and to "cut the primary septic that leaves the house directly under the toilet and the bathtub." (Id. at 668.) When he cut that portion of the pipe and pulled it down, emanating from the pipe was "a bunch of liquid waste, a plastic bag, [] white water . . . , and a . . . huge smell of acetone." (Id. at 674.) The plastic bag

---

[4] According to Detective Gang, based upon his experience, throwing evidence out of a window or flushing it down the toilet are common ways evidence may be lost when law enforcement is attempting to execute a warrant. (Id.)

contained an "off-white, hard rocklike substance."  (Id. at 676.)
The smell of acetone was an indicator to Detective Gang that there
was also powder cocaine present in the water of the pipe.  (Id. at
674.)   The Government corroborated law enforcement's theory that
Defendant flushed the drugs down the upstairs toilet by introducing
testimony from a cooperator, Tara Rogers ("Rogers"), who had known
Defendant for almost 30 years.  (Id. at 567.)  Rogers recounted a
conversation she had with Defendant at his house, during which
Defendant told her that he flushed 100 grams of crack as the police
were "ransacking" his home.  (See id. at 578-89.)  In addition to
discovering the drugs in the pipe, law enforcement also found a
Pyrex measuring cup in the kitchen and two scales that were in the
bedroom and a connected closet.  (Id. at 254, 430.)  Neither the
measuring cup nor the scales were tested for drug residue.

        The basement of Defendant's home, where law enforcement
found an individual named Christopher Whittle ("Whittle"),
contained a second bathroom.  Detective Gang testified that the
basement toilet could not have been the source of the cocaine base
discovered in the pipe.  (Id. at 249-50, 677-78.)  Detective Gang
stated that the basement bathroom was "underneath the pipe that
[he] collected [the drugs] from," and that the drugs would have
needed to be "up pumped" from the basement bathroom, a process
which involves a mechanism that takes "waste from a lower exit
line . . . through pumps that are either called a macerator pump

13

[or] a sewage pump" which use "a rotating cutting blade or a rotating, sort of disk inside" that would have shredded the plastic bag retrieved from the cut pipe.  (Id. at 677-78.)  On cross-examination, Detective Gang was asked if he had a background in plumbing, and he indicated he did based on his ownership of two homes and a commercial building because it is "cheaper" to "learn that stuff" yourself.  (Id. at 683.)  Later, during Defendant's testimony, he discussed the various improvements he made to his home, including those done in the basement.  (See id. at 811-14.) Defendant testified that he was responsible for installing the plumbing in the basement where Detective Gang cut the pipe, and that he had installed a septic pump in the basement to pump the waste from the basement up and back into the home.  (Id. at 812-13.)

       The Court finds that there is sufficient evidence to sustain the jury's verdict as to Count Seven, especially in light of the contextual clues to which Detective Gang testified about. It was more than reasonable for the jury to infer that, during the few minutes it took for law enforcement to enter Defendant's home on January 16, 2020, Defendant flushed drugs down the upstairs toilet because it had a low-level of water in it (indicating it had been recently flushed), splashed water at the base of toilet, and a cell phone was found on the vanity next to the toilet. Moreover, Detective McDermott indicated that a toilet scrub brush

had been knocked over next to the toilet.  (Id. at 256.)  In his
post-trial motion, Defendant attempts to implicate Whittle as
being responsible for flushing the drugs; however, the testimony
Defendant utilizes to support that theory is inapposite. (See
Support Memo at 11.)  This is because Whittle, who was found in
the basement, would have needed to "go outside to access the
upstairs from the basement." (Id. (citing Tr. at 261).)  In other
words, Whittle did not have direct access to get to the upstairs
bathroom from the basement, which renders the theory that Whittle
flushed the drugs down the upstairs toilet speculative, at best,
when viewed against the totality of the Government's evidence.

Defendant also seeks relief under Rule 29, as well as
Rule 33, based upon the argument that Detective Gang's testimony
regarding Defendant's plumbing was improperly admitted as lay
opinion testimony, and should have been considered as expert
testimony.  The Court disagrees.  "Whether a witness is testifying
as an expert or non-expert depends on whether his testimony is
based on personal perceptions of the matters in issue on the one
hand or his specialized knowledge of issues relevant to the case
on the other."  United States v. Johnson, No. 16-CR-0457, 2017 WL
11490479, at *2 (E.D.N.Y. Aug. 4, 2017).  A non-expert, or lay
witness, may testify to matters on which they have personal
knowledge.  See FED. R. EVID. 602; see also Zhen v. Safety-Kleen
Sys., Inc., No. 18-CV-6015, 2021 WL 4937888, at *1 (E.D.N.Y.

15

May 27, 2021) ("Lay witnesses may give testimony on matters with which they have special familiarity based on personal experience."). A lay witness may also provide opinion testimony which is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Federal] Rule [of Evidence] 702." FED. R. EVID. 701. Notwithstanding the fact that Defendant did not object to Detective Gang's testimony on this matter at trial, Detective Gang's testimony was based upon his personal perceptions as a veteran law enforcement officer participating in the search of Defendant's home as well as his basic understanding of plumbing as a homeowner and commercial building owner. See United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007) (holding that a witness's testimony is permissible lay opinion if it "resulted from a process of reasoning familiar in everyday life"). Although the Court does not believe it was erroneous to have admitted Detective Gang's testimony as lay testimony, even if was error, the other evidence introduced by the Government, as set forth above and demonstrated at trial, was sufficient to convict Defendant on Count Seven.

Accordingly, Defendant's Rule 29 motion regarding Count Seven is DENIED and Defendant's Rule 33 motion based upon Detective Gang's testimony on plumbing is also DENIED.

C.   Exclusion of Defendant's Complaints Against McDermott

Next, Defendant moves for a new trial based upon the Court's in limine ruling that precluded him from referencing certain complaints made against Detective McDermott, to wit: a complaint Defendant made to the Suffolk County Police Internal Affairs Bureau ("IAB") and Defendant's notice of claim related to the January 16, 2020 search warrant execution at Defendant's home.[5] (See Sept. 30, 2022 Mem. & Order ("M&O"), ECF No. 132, at 2.) According to Defendant, the preclusion of this evidence violated his rights under the Confrontation Clause and prejudiced him because he was unable to elicit information as to Detective McDermott's credibility and bias against him.  (See Support Memo at 21-22.)  In particular, Defendant hoped to elicit information from Detective McDermott to demonstrate that "cocaine base was not actually recovered from his home on January 16, 2020," at which time Defendant was not arrested, and to show that Detective McDermott was motivated to influence the arrest of Defendant, which

---

[5] Defendant's post-trial motion states that the Court also restricted Defendant from eliciting "his ten-year-old excessive force claims against Detective McDermott" (see Support Memo at 22); however, as noted by the Government in its opposition (see Opp'n at 8-9, 9 n.4) and acknowledged by Defendant in his reply (see Reply at 3 n.1, 14 n.2 ), no such excessive force claims were brought against Detective McDermott by Defendant.  Further, Defendant does not seek a new trial based on his inability to elicit testimony "about  civil claims that he was not personally involved with" that the Court precluded in its in limine ruling. (See Reply at 13.)

did not occur until months later, and after Defendant filed the IAB complaint and notice of claim.  (Id. at 20.)

Defendant fails to show how the Court's preclusion of the IAB complaint and notice of claim were erroneous or violated his rights under the Confrontation Clause.  "[R]ulings that improperly restrict cross-examination . . . do not necessarily implicate the Confrontation Clause.  Rather, the Constitution only guarantees an opportunity for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent, the defense might wish."  United States v. Khalil, No. 05-CR-0573R, 2005 WL 3117195, at *1 (2d Cir. Nov. 22, 2005) (quoting Harper v. Kelly, 916 F.2d 54, 57 (2d Cir. 1990)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination."  United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

"[T]he existence of a complaint containing unproven allegations" is not probative of a witness's truthfulness," see United States v. Dekattu, No. 18-CR-0474, 2019 WL 885620, at *1 (E.D.N.Y. Feb. 22, 2019) (citing United States v. Ahmed, 14-CR-0277, 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016)), and the Court's preclusion of Defendant's complaints against Detective McDermott here was not an abuse of discretion.  In fact, defense

18

counsel was able to cross-examine Detective McDermott about his
involvement in the investigation of Defendant throughout 2019 and
2020, including his participation in the application for the search
warrant of Defendant's home.   (See, e.g., Tr. at 350-436.)
Defendant could have attacked the credibility of Detective
McDermott based on a personal or professional interest in the
outcome of his investigation into Defendant without utilizing the
unsubstantiated IAB complaint and notice of claim which lack
probative value.   Indeed, Defendant's counsel spent considerable
time in his summation doing so.   (See id. at 863-65, 868, 873.)
Moreover, the Court does not understand Defendant's argument which
suggests that Defendant's filings of the IAB complaint and notice
of claim are "probative of the fact that cocaine base was not
actually recovered" on the day of the search on January 16, 2020.
(See Support Memo at 20.)   This is especially true where, as here,
there was no evidence adduced at trial that suggested the cocaine
base recovered from the pipes in Defendant's home was "planted" by
law enforcement during the execution of the search warrant.

           Accordingly, this aspect of Defendant's Rule 33 motion
is DENIED.

     D.   Credibility of the Government's Witnesses

           Defendant argues that the testimony by Detective
McDermott, Detective Gang, Miller, Filla, Kiera McPherson
("McPherson"), and Rogers was "so lacking in credibility that the

verdict should not be allowed to stand." (Support Memo at 22.)
"Although Rule 33 allows the Court to weigh the evidence and make
credibility determinations, it should grant a motion for a new
trial based on witness credibility 'only where testimony is
patently incredible or defies physical realities.'" United States
v. Bendelstein, No. 18-CR-0309, 2023 WL 2457842, at *4 (E.D.N.Y.
Mar. 10, 2023) (quoting United States v. Bimbow, No. 21-CR-0048,
2022 WL 1617490, at *4 (S.D.N.Y. May 23, 2022)).

Defendant primarily argues that each of these witnesses
had a personal interest in aiding the Government. (Support Memo
at 23.) Assuming that is true based upon the Detectives'
employment as law enforcement officers being involved in the
investigation of Defendant, as well as Miller, Filla, McPherson,
and Rogers testifying as confidential informants or cooperating
witnesses, the Court provided adequate instructions to the members
of the jury to allow them to properly assess the credibility of
these Government witnesses. (See Tr. at 918-19 ("The fact that a
witness may be employed as a law enforcement officer . . . does
not mean that his testimony is necessarily deserving of more or
less consideration, or greater or lesser weight than that of an
ordinary witness. At the same time, it's quite legitimate for the
defense to try to attack the credibility of the law
enforcement . . . witness on the grounds that his testimony may be
colored by personal or professional interest in the outcome of the

20

case."); id. at 919-20 ("[T]he testimony of a witness who has been promised that he or she will not be prosecuted and may have received a reduction in their sentence should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely, determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interest . . . .").)

Defendant also attacks the testimony by Miller, Filla, McPherson, and Rogers based upon their histories of drug use; however, the jury was also properly instructed as to the considerations applicable to evaluating the credibility of witnesses who were using or addicted to drugs. (Id. at 916 ("The testimony of a witness who was using drugs at the time of the events he is testifying about or who is using drugs or an addict at the time of his testimony may be less believable because of the effect the drugs have on his ability to perceive or relate events in question. If you decide to accept his testimony after considering it in light of all the evidence in this case, then you must give it whatever weight if any you find it deserves.").)

Defendant also highlights inconsistences in the testimony of each of these witnesses, which the Court does not find significant enough to warrant relief under Rule 33. Defendant notes three contradictions within the Detectives' testimony, which pertain to: whether Detective McDermott heard Defendant agree with

a co-conspirator to cook crack cocaine for another person; whether Detective McDermott witnessed Miller's vehicle be searched on December 19, 2019; and whether it was Detective McDermott or Detective Gang who made the decision to cut the pipe in Defendant's basement. (Support Memo at 23-24.) Defendant also notes that: Miller stated he stopped using crack in 2018 but later admitted to continuing his drug use throughout 2019 (id. at 24); Filla stated he had not used drugs for five or six years but was arrested for possessing cocaine base in 2020 (id. at 25); and Filla was inconsistent regarding how long he had been visiting Defendant at his home or where, within Defendant's home, he purchased drugs (id. at 25-26). In addition, Defendant submits that McPherson admitted to lying to Georges about her ability to cook crack cocaine and that Rogers admitted to lying to friends and law enforcement during the time she used drugs. (See id. at 26.) These relatively minor inconsistencies, which do not directly pertain to the ultimate issues in this case, taken in isolation or cumulatively, do not render the Government's witnesses so lacking in credibility to justify the Court overriding the will of the jury.

The Government's witnesses' motivations to testify, history of drug use, inconsistent statements, and ability to tell the truth were factors upon which the jury was instructed and utilized when assessing the witnesses' credibility. Nevertheless,

the jury concluded that Defendant was guilty beyond a reasonable doubt on five of seven counts. Defendant had ample opportunity to present his claims about the lack of credibility of the Government's witnesses through cross-examination and closing arguments, and no exceptional circumstances exist to warrant reviewing the jury's findings as to the weight and credibility of the testimony by Detective McDermott, Detective Gang, Miller, Filla, McPherson, and Rogers.

Accordingly, Defendant's motion for a new trial based on the credibility of the Government's witnesses is DENIED.

E.   Defendant's Prior Narcotics Convictions

At the in limine stage, the Government sought to introduce three of Defendant's prior convictions regarding the sale of or possession of controlled substances pursuant to Federal Rule of Evidence 404(b). (Gov't Mot. in Lim., ECF No. 113, at 7.) These convictions were: Criminal Possession of a Controlled Substance in the Third Degree from December 21, 2011; Criminal Possession of a Controlled Substance in the Third Degree from November 2, 2005; and Criminal Sale of a Controlled Substance in the Third Degree from November 2, 2005. (Id. at 3.) The Court excluded the 2005 convictions and permitted the Government to utilize the 2011 conviction; however, the Government was only permitted to introduce the 2011 conviction for impeachment purposes if Defendant elected to testify. (Sept. 30, 2022 M&O

23

at 2.)  Since Defendant did testify at trial, on cross-examination, the Government elicited the 2011 conviction.  (See Tr. at 822-23.)

Defendant seeks a new trial based upon the admission of the 2011 conviction, as well Defendant's trial counsel's "inadvertent" elicitation of a 2008 narcotics sale conviction during Defendant's direct testimony.  (Support Memo at 27 & n.1.) The Court finds both of these arguments insufficient to warrant relief under Rule 33.  First, the Government properly elicited the 2011 conviction for the limited purpose identified by the Court in its in limine ruling.  On direct examination, Defendant was specifically asked about Miller's visit to his home on December 19, 2019, the date relevant to Count Three.  (Tr. at 806.) Defendant admitted to "giving" Miller marijuana that day (id.); however, on cross, Defendant denied "selling" the marijuana to Miller (id. at 817).  The Government also elicited testimony from Defendant on cross in which Defendant stated, "my marijuana is always where I am" and that law enforcement recovered marijuana from his home on January 16, 2020.  (Id. at 818.)  Further, although Defendant stated the marijuana found by law enforcement on January 16, 2020 was visible in "pictures," Defendant conceded that those pictures had not been introduced at trial but existed in other unidentifiable discovery materials.  (Id. at 818-19.)  Defendant's testimony as to what transpired on December 19, 2019 with Miller and what was recovered from his home on January 16, 2020 plainly

24

refutes the version of events described by the Government's witnesses. By doing so, Defendant squarely put his credibility at issue to justify the Government's use of the 2011 conviction of "possession of narcotic drugs with intent to distribute," and to elicit testimony concerning Defendant's knowledge of the illegality of possessing drugs with the intent to sell them. (See id. at 823.)

Even if it was erroneous for the Court to permit the Government to inquire about the 2011 conviction for the limited purpose described above, the Court does not believe the admission of that conviction to constitute a manifest injustice based upon the amount and weight of the Government's evidence against Defendant in this case. Similarly, the Court disagrees with Defendant that his trial counsel's brief line of questioning about his 2008 conviction for selling narcotics unfairly impacted the jury. (See Tr. at 795.) The Government did not cross-examine Defendant on this conviction thus reducing the limited impact, if any, the testimony may have had on the jury.

Accordingly, Defendant's Rule 33 motion based upon his testimony concerning prior convictions is DENIED.

F.   Defendant's Incarceration

Embedded within his arguments for a new trial based upon the jury hearing testimony about his 2008 and 2011 convictions, Defendant also takes issue with Rogers' testimony that Defendant

was currently living "in a federal jail" at the time of his trial. (Support Memo at 28 (citing Tr. at 568).)   To avoid prejudice to Defendant, the Court instructed the jury "to ignore [Rogers'] comments" and that Defendant "is not in any federal prison." (Tr. at 572.)   The Court does not find this singular, isolated comment by Rogers to have prejudiced Defendant such that a new trial is warranted.   See United States v. Deandrade, 600 F.3d 115, 119 (2d Cir. 2010) ("[A] brief and fleeting comment on the defendant's incarceration during trial, without more, does not impair the presumption of innocence to such an extent that a mistrial is required.").   Thus, this prong of his Rule 33 motion is also DENIED.

G.   Effective Assistance of Counsel

Last, Defendant seeks relief pursuant to Rule 33 on the grounds that he was denied his Sixth Amendment right to the effective assistance of counsel. (See Support Memo at 28-31.) Defendant argues his trial counsel failed him with respect to Count Seven by not discussing it in their summation, by failing to object to Detective Gang's testimony on plumbing, by failing to implicate another individual in Defendant's home for possession of the cocaine base recovered from the pipes during the execution of the search warrant, and by not inquiring about law enforcement's decision to wait several months after the search warrant was executed to arrest Defendant. (Id. at 29.)   Defendant also claims

26

he received ineffective assistance related to his trial counsel's eliciting of his 2008 conviction. (Id. at 30-31.)

"To support a claim for ineffective assistance of counsel, the defendant must (1) demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is proof of prejudice from counsel's allegedly defective performance." United States v. Borrero, No. 13-CR-0058, 2014 WL 1918607, at *2 (S.D.N.Y. May 12, 2014) (citing Strickland v. Washington, 446 U.S. 668, 687-88 (1984)). "To demonstrate prejudice it must be shown that, but for defense counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different." United States v. Ramos, No. 06-CR-0172, 2011 WL 291874, at *3 (S.D.N.Y. Jan. 13, 2011) (citing Strickland, 466 U.S. at 694).

The Court concludes that Defendant failed to meet the high burden required to prevail on an ineffective assistance claim. In his summation, Defendant's trial counsel attacked the credibility of McPherson who corroborated the Government's theory that Defendant was responsible for flushing the cocaine base down the toilet. (Tr. at 880-82.) Trial counsel also elicited testimony by Detective Gang that demonstrated another individual was present in the basement of Defendant's home during the execution of the search warrant. (Id. at 695-96.) Although

27

Defendant takes issue with trial counsel's summation and strategies, particularly with respect to Count Seven, such "choices [by counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" under Strickland. See United States v. Kahale, No. 09-CR-0159, 2010 WL 3851987, at *28 (E.D.N.Y. Sept. 27, 2010), aff'd sub nom., United States v. Graham, 477 F. App'x 818 (2d Cir. 2012). Further, as set forth above, the Court has already determined that Detective Gang's testimony about the plumbing in Defendant's home was properly admitted and that the impact of Defendant's testimony about his 2008 conviction was minimal, thus negating the remaining bases for Defendant's ineffective assistance claim. The trial transcript, the docket, and the Court's recollection of the performance by Defendant's trial counsel met, if not exceeded, any objective standard of reasonableness. In fact, the performance by Defendant's trial counsel was so effective that Defendant was acquitted on Counts One and Two.

Accordingly, Defendant has failed to meet the high burden required to demonstrate an ineffective assistance claim, and this aspect of his Rule 33 motion is DENIED.

* * *

The Court has considered Defendant's remaining arguments and finds them to be without merit. Accordingly, Defendant's

motions pursuant to Rule 29 and Rule 33 are DENIED in their entirety.

CONCLUSION

For the reasons stated herein, Defendant's motions for an acquittal and for a new trial are DENIED in their entirety.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 3, 2023
      Central Islip, New York